## Gulf Refining Company v. Plotnick

*Geisenberger & Geisenberger*, for plaintiff.
*Robert Ruppin*, for defendant.

SCHAEFFER, J., March 18, 1935.—The Gulf Refining Company, plaintiff, sued the defendant to recover on a book account for gasoline and oil alleged to have been sold by plaintiff to defendant. On August 27, 1933, the automobile of defendant, who is a resident of Lancaster County, was stolen in Philadelphia. The defendant had kept his charge-a-plate or credit token issued by the plaintiff to him in his stolen automobile. The one who stole the automobile used this credit token in the purchase of gasoline and oil bought at stations of the plain-

tiff company and at stations of its duly authorized dealers mostly in the vicinity of Boston, Massachusetts. It was so used from August 28, 1933, to October 13, 1933. The defendant received bills for same, but paid no attention to them and did not notify the plaintiff of the stolen credit token or about the bills until the middle of November, 1933, according to plaintiff's testimony, or, according to defendant's own testimony, sometime in October, 1933. At the trial of the case the court instructed the jury to confine its deliberations to the amount of sales so made directly by the plaintiff company at its own service stations, or $38.37. The balance of the claim amounting to $135.51 represented sales made by authorized dealers of the plaintiff company of the dealers' products to the fraudulent purchaser. The court eliminated these items relating to authorized dealers. Both plaintiff and defendant presented points for binding instructions which were refused. The jury found in favor of the plaintiff and against the defendant in the sum of $38.37. The plaintiff has not pressed its motion for judgment n. o. v. or for a new trial. The defendant has abandoned his reasons for a new trial, but asks for judgment n. o. v.

The legal question presented is whether the seller has a right to recover from the authorized holder of a charge-a-plate or credit token for merchandise sold and delivered to one who had stolen and used the same.

The nature of the credit token or charge-a-plate in question was explained by the plaintiff at the trial as follows: "A charge-a-plate is a token of credit, and it is issued to proper credit risks who, after scrutiny, are given credit for a term of 30 days." The credit plate in question had on it the name of defendant, his address, and certain numbers. This enabled the holder of the token to purchase gasoline, oil, or any of the plaintiff's products on credit at plaintiff's service stations or at the stations of any authorized dealers of the plaintiff in any State where the Gulf products are sold. The invoice at the time of the purchase by the holder of the charge-a-plate is signed by the

purchaser. At the end of each month a copy of such invoice is mailed to the customer with a statement.

Apparently the only case in this state bearing directly upon the question at issue is Wanamaker v. Megary, 24 Dist. R. 778 (1915), decided by the Municipal Court of Philadelphia. The holder of the credit token at Wanamaker's Department Store lost it together with her visiting cards containing her name and address. The credit token had a number engraved on it corresponding to the number of the customer's account. The customer notified the plaintiff store the following morning at 8:45 and had credit stopped on the token. During the short interim, however, the plaintiff sold certain merchandise to another person who presented the token. It was held that the token is in effect an order upon the plaintiff to deliver goods to the person presenting it and to charge the goods to the defendant's account. The court said that the defendant kept her token in an insecure place and as between two innocent parties, " 'he who makes the loss possible should bear it'." The court further held that the credit token "is similar to a check, a bill of exchange or other negotiable instrument payable to bearer." The defendant was held responsible for the amount of the purchases.

However, a different view is taken by the Supreme Court of New Jersey in Lit Bros. v. Haines, 98 N. J. L. 658, 121 Atl. 131 (1923). There the token containing the defendant's number of her account was stolen from defendant and presented by the thief to the plaintiff store and merchandise sold and delivered by plaintiff to an address different from that of defendant. The cost of the goods was charged to the defendant. The court held that the coin was no more than an identification coin, did not possess the attributes of a negotiable instrument, and without proof of an agreement by defendant with plaintiff that it could sell goods to anyone presenting the coin, and charge the purchase to defendant, the defendant was not liable for the goods delivered to the thief under the facts as agreed upon in the case. The case of Wanamaker v. Me-

gary, supra, was commented on adversely because a credit token has none of the requisites of a negotiable instrument.

In John Wanamaker, Philadelphia, v. Chase, 81 Pa. Superior Ct. 201 (1923), it was decided that where defendant had a credit account with plaintiff department store and in connection therewith had received a store token or coin, plaintiff could show how the token was intended to be used in order to establish the exact relationship in which the parties dealt with each other. There was an understanding that upon presentation thereof in any department of the store the holder was entitled to purchase goods upon credit and take the goods with her or order them to be sent to any address which she might see fit to give.

In The Jones Store Co. v. Kelly et al., 225 Mo. App. 833, 36 S.W. (2d) 681 (1931), it was held that a customer is not liable if another wrongfully, without the customer's knowledge, gains possession of a numbered charge account coin and uses the coin in making purchases. However, if the customer gave the charge account coin to another person, intending such person could purchase on customer's credit, it became the customer's debt. Under the disputed evidence it was held to be a question for the jury and not for the court.

A credit coin or charge-a-plate is not in the nature of a negotiable instrument. In the instant case it is described not merely as a means of identification, but rather as a token of credit arrangement or contract. Of itself it is neither useful nor valuable, but it represents something of value. To carry into effect its intended use there is an implied contract that it will be used or honored properly and with due care.

Constructive contracts or contracts implied in law are created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and can be enforced by an action ex contractu. In Graham v. Cummings, 208 Pa. 516, 534, it was held that,

" 'A contract is sometimes said to be implied when there is no intention to create a contract, and no agreement of parties, but the law has imposed an obligation, which is enforced as if it were an obligation arising ex contractu'. . . . Constructive contracts are fictions of law adopted to enforce the legal duties by actions of contract where no proper contract exists, express or implied: Hertzog v. Hertzog, 29 Pa. 465." The same principle applies to a bailment where it is for the benefit of both parties. Ordinary diligence as to care is required.

While the plaintiff sued on a book account, nevertheless, under the defendant's affidavit of defense containing new matter and the plaintiff's reply thereto and under the evidence, the question of an implied or constructive contract between the parties becomes relevant and a part of the issue in the instant case. The defendant in his new matter sets forth the details of the stolen courtesy card and avers specifically that the plaintiff "did not use due diligence and ordinary care in ascertaining whether or not the person or persons making said purchases and presenting said courtesy card was or were the defendant or any of his duly authorized agents, servants or employes". The plaintiff in its reply likewise states that "it was stolen by reason of the carelessness and negligence of defendant in leaving or permitting the said courtesy card to be left in his automobile. Plaintiff avers that the defendant failed to give notice to the plaintiff of the fact that his said courtesy card had been stolen and that if the said defendant had done so the plaintiff would then have been enabled to have invalidated his courtesy card in all of its respective service stations and that the said gasoline and oils which were sold on the credit of said courtesy card, if sold to other than the defendant, or his agents, servants or employes, would not have been sold by the plaintiff."

Ordinarily the bona fide holder of a courtesy coin or plate should not be held liable for the debt created by the use of it by a thief or by one not authorized to obtain credit on it. However, under the particular facts and circum-

stances of the instant case the court feels that it properly submitted part of the claim, to wit, $38.37, to the jury for its determination in accordance with the pleadings and the evidence for the reasons herein stated.

And now, March 18, 1935, the motion for judgment n. o. v. filed on behalf of the defendant is overruled. All other rules pending in this case are discharged.

From George Ross Eshleman, Lancaster.